# IN THE COURT OF APPEALS OF IOWA

No. 24-0274
Filed May 7, 2025

**WILLIAM RILEY,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Black Hawk County, Joel A.
Dalrymple, Judge.

        William Riley appeals the district court's denial of his application for
postconviction relief.  **AFFIRMED.**

        Richard Hollis, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney
General, for appellee State.

        Considered without oral argument by Greer, P.J., Chicchelly, J., and Bower,
S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2025).

**BOWER, Senior Judge.**

William Riley appeals the district court's denial of his application for postconviction relief (PCR) following his 2019 conviction for third-degree sexual abuse, second or subsequent offense. Riley claims the PCR court "erred by not recusing itself from this case"; his trial counsel was ineffective by failing to adequately advise him "as to the benefits of a jury trial over a bench trial"; and he is actually innocent. Upon our review, we affirm.

## I.  *Background Facts and Proceedings*

In its ruling affirming Riley's conviction on direct appeal, our court set forth the following background facts:

> On September 14, 2017, Riley moved into the apartment next to J.S. Riley introduced himself to J.S. and asked if J.S. could help him set up his cable television. Riley also asked J.S. if he knew "any stores around here." Riley and J.S. visited various retail stores in the area together. After dropping off Riley's purchases at Riley's apartment, they ordered a pizza at a convenience store nearby. Riley paid for the pizza and returned to his apartment. J.S. waited for the pizza to bake. After the pizza was ready, J.S. went back to Riley's apartment.
> After J.S. returned to Riley's apartment with the pizza, Riley sexually abused him. Riley placed his fingers inside J.S.'s anus. Riley then placed his penis inside J.S.'s anus. J.S. told Riley he was in pain and told Riley to stop. J.S. also tried to leave Riley's apartment once, but Riley stopped him. Riley grabbed J.S., threw him back on the bed, and held J.S.'s hands behind his back. Riley resumed anal intercourse as J.S. kept telling him to stop. Riley continued until he ejaculated inside J.S.'s anus.
> The next day, J.S. told a neighbor what happened. J.S. then contacted the police. That same day, a police officer interviewed J.S. The officer told J.S. "to think it over really hard if I can press charges." The officer gave J.S. his card and told him to call back in two days if he wanted to press charges.
> On September 17, J.S. again called the police to report that Riley sexually abused him three days before. After telling two other police officers what happened, J.S. went to the hospital for a sexual-assault examination. Anal swabs were taken from J.S. Sperm was

detected on J.S.'s anal swab. A DNA profile was produced from the sperm. It matched Riley's DNA profile.

Police also made contact with Riley. Eventually, Riley agreed to an interview at the Waterloo police station. Riley denied any kind of sexual relations between himself and J.S. When police told Riley that J.S. was accusing him of sexual assault, Riley specifically told the inquiring officer to "check the DNA in his ass."

*State v. Riley*, No. 19-1142, 2021 WL 1904878, at *1 (Iowa Ct. App. May 12, 2021) (footnotes omitted). This court rejected Riley's challenges to the sufficiency of the evidence supporting his conviction and the admission of testimony by the emergency room nurse who examined J.S. *Id.* at *2–5. The court declined to address Riley's claim of ineffective assistance of counsel relating to counsel's failure to move for dismissal based on the State's failure to establish venue. *Id.* at *3.

Riley filed a PCR application, raising various claims of ineffective assistance of trial and appellate counsel and maintaining he is actually innocent. Following the PCR trial, at which Riley was the only witness, the district court denied the application. Riley appeals.

## II. Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Accordingly, "we review claims of ineffective assistance of counsel de novo." *Id.*

## III. Recusal

Riley first challenges the district court's failure to recuse itself from his PCR proceeding because "the same judge that presided over this [PCR] action also

presided over the hearing of Riley's waiver of jury trial." The State argues Riley failed to preserve this claim because he did not raise it before the PCR court. Riley responds he did not have to preserve error because the court was obligated to recuse itself regardless of whether he moved to recuse.

A district court judge does have an ethical duty to sua sponte recuse himself from matters which disqualify him—regardless of whether a motion to disqualify is filed. *See* Iowa Code of Judicial Conduct R. 51:2.11 cmt. 2. "But this obligation does not relate to error preservation. The issue of recusal is not preserved for our review if a litigant fails to bring that issue to the district court's attention." *State v. Pecora*, No. 23-1292, 2024 WL 4965864, at *3 (Iowa Ct. App. Dec. 4, 2024); *Scheckel v. City of Oelwein*, No. 23-0232, 2024 WL 3283261, at *3 (Iowa Ct. App. July 3, 2024) ("Before we can consider a claim of error on appeal—such as Scheckel's claim that the district judge should have recused—a party must first preserve the error by properly raising it in the district court."); *Harris v. Smith*, No. 23-1966, 2025 WL 52838, at *2 (Iowa Ct. App. Jan. 9, 2025) ("Terrell never moved for the judge's recusal and did not raise bias at any point during trial or in his motion to reconsider, enlarge, and amend. Error is therefore not preserved for our review, and we do not address any of his contentions of bias."); *State v. Mann*, 512 N.W.2d 528, 536 (Iowa 1994) (finding a recusal claim was "waived" when the party "did not raise the issue immediately, but rather waited until the judge's adverse decision in the postconviction case to raise it").

Here, there is no dispute Riley failed to raise the issue of recusal before the PCR court. Accordingly, we cannot consider it on appeal.

## IV. *Waiver of Jury Trial*

Riley claims his trial counsel was ineffective by "fail[ing] to adequately advise [him] as to the benefits of a jury trial over a bench trial." To establish ineffective assistance of counsel, Riley must show (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

Riley filed a written waiver of his right to a jury trial. The district court then conducted a hearing with Riley explaining the ramifications of that waiver and received Riley's consent. At the hearing, the court had a lengthy discussion with Riley regarding the number of rights "a jury trial would afford [him]" and his voluntary choice to waive a jury trial. Riley stated he "underst[ood]" and waiver was his voluntary decision. At the end of the colloquy, the court stated, "I'll note then that you did waive it today, that it is a knowing, intelligent and voluntary waiver, it's not the product of force, threats or promises."

At the PCR trial, Riley acknowledged he discussed with trial counsel the pros and cons of whether he should have a jury trial or bench trial; "Yes, we did. . . . He asked me what I want. At the time, you know, I just told him that I'll just take, what, a bench trial, you know what I'm saying." The following exchange took place during the PCR trial:

> Q: Okay. So you said it was okay to go to a bench trial?
> A: Yeah, at the time, yes.
> Q: Okay. When you say at the time, what do you mean?
> A: Well, you know, when he came up there you say what you want to do, a jury trial or you want a bench trial with the judge. I say, well, I want the one with the judge, you know what I'm saying.
> . . . .

> Q: And when your attorney came to talk to you about what do you want, a judge or a jury, were you in jail or were you in the courthouse?  A: I was—I was in—I was in jail.
>
> Q: Okay.  Was there ever a time when you decided you wanted a jury trial rather than a judge trial?  A: Well it—at the time, you know, it wouldn't have mattered, you know what I'm saying.  A judge, a jury, I just wanted to see how it's going to come out, you know.  You know.  I just picked one of the—just one.
>
> Q: Okay.  So you proceeded then to a trial to the judge.  Is that right?  A: Yes.

Riley also acknowledged he filed a written waiver and he "appeared in front of the judge to acknowledge [his] waiver of the jury trial in person."

The record does not support Riley's claim he was not advised of the rights he was giving up by waiving his right to a jury trial.  *See Larson v. State*, No. 23-1635, 2024 WL 4039420, at *2 (Iowa Ct. App. Sept. 4, 2024) ("We have no basis to question the voluntariness of the jury trial waiver on this record and, thus, have no reason to grant relief on the claim of ineffective assistance of trial counsel.").  Nor has Riley shown he received ineffective assistance based on any advice by trial counsel to waive the right to a jury trial and instead proceed with a bench trial.  *See Thede v. State*, No. 21-0096, 2023 WL 2152664, at *4 (Iowa Ct. App. Feb. 22, 2023) ("Generally, tactical decisions such as the decision to advise waiving the right to a jury trial 'are immune from subsequent attack by an aggrieved defendant claiming ineffective assistance of counsel.'" (quoting *Osborn v. State*, 573 N.W.2d 917, 924 (Iowa 1998))).  We affirm on this issue.

## V. Actual Innocence

Riley claims the PCR court erred "by rejecting [his] actual innocence claim" because "the sexual activity was 'consensual.'"  To succeed on this claim, Riley must prove "by clear and convincing evidence that, despite the evidence of guilt

supporting the conviction, no reasonable fact finder could convict the applicant."

*Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019) (citation omitted). This requires

"factual innocence, not mere legal insufficiency." *Id.* at 7 (citation omitted).

The PCR court rejected Riley's claim, finding:

> The district court found in favor of the State and against the defendant Riley at the conclusion of the State's evidence upon a request for directed verdict to the extent the evidence presented established a question of fact regarding each element of the offense charged. Further, the district court found in favor of the State and against the defendant in the defendant's post-trial motion for new trial. Specifically, the district court utilized the standard of whether the verdict was "contrary to the weight of the evidence." The Court noted the inconsistent nature of the complaining witness's testimony and nonetheless found him credible. The Court specifically found "the verdict is not contrary to the weight of the evidence given the Court's findings of credibility and how the evidence should be weighed in this case, which I gave careful consideration to. . . . The verdict is consistent with the weight of the evidence and particularly consistent with the Court's findings concerning the credibility and the weight to be given certain evidence and not to be given other evidence." Finally, the Court of Appeals found sufficient evidence supported Riley's conviction. The undersigned finds no evidence presented within the postconviction trial or supporting pleadings to suggest anything other than a support of the district court's finding of guilt beyond a reasonable doubt to the offense of Sexual Abuse in the Third Degree.

Upon our de novo review of the record, we concur with the court's conclusion.

We affirm the court's denial of Riley's PCR application.

**AFFIRMED.**